UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DELJUAN MARKE GOODLOW,

Petitioner,

v.

RONALD OLIVER, *et al.*,

Respondents.

Case No. 3:20-cv-00364-MMD-CLB

ORDER

## I. SUMMARY

Petitioner Deljuan Marke Goodlow, who is currently incarcerated at the Southern Desert Correctional Center, brings this petition for writ of habeas corpus (ECF No. 45 ("Petition")) with representation by appointed counsel. For the reasons stated below, the Court denies the Petition.

## II. BACKGROUND

Goodlow was convicted, after a jury retrial in Nevada's Second Judicial District Court (Washoe County), of first-degree murder with the use of a deadly weapon, invasion of the home, and burglary.

Goodlow testified at his trial. (ECF Nos. 29-37 at 115–45; 29-38 at 5–63.) He testified that on May 13, 2007, he and Frank Smith, his codefendant, drove from Stockton, California to Reno, checked into the Lido Inn motel, visited Reno casinos, gambled, drank alcohol, and smoked marijuana. (ECF No. 29-37 at 118–22.) They checked out of their third-floor motel room at about 3:00 a.m. on May 14. (*Id*. at 129.) As Goodlow was leaving the room, he heard Smith yelling from the landing outside a room occupied by Royce Riley on the second floor. (*Id*. at 129–30.) Goodlow joined Smith there and saw broken

glass on the floor of the landing. (*Id*. at 131–32.) Smith appeared agitated and upset and had blood dripping from his hand. (*Id*.) Smith handed Goodlow a firearm and told him the occupants of the room were "trippin." (*Id*. at 132–34.) Goodlow testified that he went and looked in the window of the room, said "What's going on?", pointed the gun through the window toward Riley, and told him to "Back up." (*Id*. at 135–38.) Riley reached toward the gun Goodlow was pointing; Goodlow pulled the gun back, and the gun fired. (*Id*.) Goodlow testified that it was not his intention to shoot the gun. (*Id* at 139–40.) Goodlow cut his arm on the broken glass when he pulled back out of the window. (*Id*. at 138–39.) Goodlow then kicked the door and yelled to Riley: "'Open the door. You trippin. Open the door and come outside.' We can fight or whatever…." (*Id*. at 140–42.) According to Goodlow, Riley was yelling, "I'm not trippin. I'm not trippin." (*Id*. at 142–43.) Goodlow then told Smith he "was ready to leave." (*Id*. at 143.) Goodlow walked to a stairwell, but Smith did not follow him, so he turned around and went back to where Smith was, in front of Riley's room, to get him to leave. (*Id*.) According to Goodlow, Smith didn't want to leave. (*Id*. at 144.) Goodlow then went back to the window, "pulled the firearm up," and said "you trippin? You trippin?" (*Id*. at 145.) He testified he did that for the "intimidation factor." (*Id*.) Riley yelled "No. No.", "Help. Help." (*Id*.) Goodlow testified that he was then, "like, 'Man, I'm gone,'" and he turned and ran. (*Id*. at 145–46.) As he left the area outside Riley's room, Goodlow heard a gunshot; he ran to the stairwell, down to the parking lot, and to the car. (*Id*. at 146.) Smith soon came down and joined him at the car, and they drove away. (*Id*. at 147–48.) Riley was shot and killed.

On June 23, 2009, following his first trial, a judgment was filed convicting Goodlow of first-degree murder with the use of a deadly weapon, invasion of the home, and burglary. (ECF No. 26-23.) Goodlow appealed and the Nevada Supreme Court reversed and remanded, ruling that the trial judge made improper comments during jury selection. (ECF No. 27-26.)

Goodlow's retrial commenced on September 22, 2014. (ECF No. 29-33.) The jury again found Goodlow guilty of first-degree murder with the use of a deadly weapon, invasion of the home, and burglary. (ECF Nos. 30-2, 30-3, 30-4.) The new judgment of conviction was filed on February 5, 2015. (ECF No. 30-9.) Goodlow was sentenced as follows: for the murder, life in prison with the possibility of parole after 20 years and an equal and consecutive sentence for the use of a deadly weapon; for the invasion of the home, a concurrent sentence of 22 to 96 months in prison; for the burglary, another concurrent sentence of 22 to 96 months in prison. (*Id*.) Goodlow again appealed and on March 17, 2016 the Nevada Supreme Court affirmed. (ECF No. 30-39.)

Goodlow filed a *pro se* post-conviction petition for writ of habeas corpus in the state district court on March 23, 2017. (ECF No. 31-13.) The court appointed counsel for Goodlow (ECF No. 31-18), and with counsel Goodlow filed a supplemental petition. (ECF No. 31-31.) The state district court granted the State's motion to dismiss the petition. (ECF No. 32-3.) Goodlow appealed, and the Nevada Supreme Court affirmed. (ECF No. 32-33.)

Goodlow then initiated this federal habeas corpus action, on June 17, 2020, by submitting a *pro se* petition for writ of habeas corpus. (ECF No. 6.) The Court granted Goodlow's motion for appointment of counsel (ECF No. 7) and appointed counsel to represent him (ECF No. 5). Goodlow then filed a counseled first amended habeas petition, and subsequently a second amended habeas petition. (ECF Nos. 11, 17.) Before the parties completed the briefing of the claims in Goodlow's second amended petition, he filed a motion for leave to file a third amended habeas petition with the proposed third amended petition attached (ECF No. 39), and a motion to stay (ECF No. 41) requesting that the case be stayed so that he could further exhaust claims in state court. The Court granted both unopposed motions. (ECF No. 44.) Goodlow's third amended petition was filed (ECF No. 45), and the case was stayed on February 18, 2022, pending Goodlow's further state court proceedings (ECF No. 44).

Goodlow filed a second state habeas petition on January 24, 2022. (ECF No. 59-5.) The state district court dismissed that petition. (ECF No. 59-15.) Goodlow appealed, and the Nevada Court of Appeals affirmed, ruling that all his claims were subject to the law of the case doctrine and/or procedurally barred with no showing of cause and prejudice to overcome the procedural bar. (ECF No. 59-43.) The stay of this action was then lifted on July 28, 2023. (ECF No. 52.)

Goodlow's third amended petition (ECF No. 45 ("Petition")) includes the following claims:

> Ground 1: "The trial court committed structural error in violation of Goodlow's Fifth, Sixth and Fourteenth Amendment rights when it denied his fair-cross-section challenge to the jury venire."
>
> Ground 2: "Goodlow was denied his right to a fair trial under the Fifth, Sixth and Fourteenth Amendments when the trial court denied his motion to sever, thereby allowing his co-defendant's attorney to become a second prosecutor."
>
> Ground 3A: "Goodlow was denied his right to effective assistance of trial … counsel in violation of his Fifth, Sixth and Fourteenth Amendment rights when his attorney failed to challenge the proposed jury instruction that precluded his defense of withdrawal."
>
> Ground 3B: "Goodlow was denied his right to effective assistance of … appellate counsel in violation of his Fifth, Sixth and Fourteenth Amendment rights when his attorney failed to challenge the proposed jury instruction that precluded his defense of withdrawal."

Respondents filed a motion to dismiss, arguing that the claims in Grounds 1 and 3B are barred by the statute of limitations and that all of Goodlow's claims are procedurally defaulted. (ECF No. 57.) The Court denied that motion without prejudice to Respondents asserting the exhaustion/procedural default defenses in their answer. (ECF No. 66.)

## III. DISCUSSION

### A. Standard of Review for Claims Adjudicated in State Court

28 U.S.C. § 2254(d) sets forth the standard of review under the Antiterrorism and Effective Death Penalty Act (AEDPA), which is generally applicable to habeas claims adjudicated on their merits in state court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)) (internal quotation marks omitted). A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 75 (quoting *Williams*, 529 U.S. at 413) (internal quotation marks omitted). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409). The analysis under section 2254(d) looks to the law that was clearly established by United States Supreme Court precedent at the time of the state court's decision. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

(2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (AEDPA standard is "a difficult to meet … and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." (quoting *Harrington*, 562 U.S. at 102; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)) (internal quotation marks omitted)).

**B. Exhaustion and Procedural Default**

A federal court may not grant relief on a habeas corpus claim that has not been exhausted in state court. *See* 28 U.S.C. § 2254(b). The exhaustion doctrine is based on the policy of federal-state comity and is designed to give state courts the initial opportunity to correct alleged constitutional deprivations. *See Picard v. Conner*, 404 U.S. 270, 275 (1971). To exhaust a claim, a petitioner must fairly present that claim to the State's highest court and give that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). The "fair presentation" requirement is satisfied when the claim has been presented to the highest state court by describing the operative facts and the legal theory upon which the federal claim is based. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir.1982), *cert. denied*, 463 U.S. 1212 (1983).

In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the State's procedural requirements in presenting claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. *See* 501 U.S. 722, 731–32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of

habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Id.* at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)). In *Martinez v. Ryan*, the Supreme Court ruled that ineffective assistance or lack of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. *See* 566 U.S. 1 (2012).

If the petitioner overcomes the procedural default of a claim, by showing cause and prejudice for example, the claim that was not adjudicated on its merits in state court is addressed *de novo* in the federal habeas action. *See Patsalis v. Shinn*, 47 F.4th 1092, 1097–98 (9th Cir. 2022).

**C. Section 2254(e)(2) and *Ramirez***

Federal habeas review under 28 U.S.C. § 2254(d)(1) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Pinholster*, 563 U.S. at 180–81 (district court erred in considering evidence introduced for first time in federal court). 28 U.S.C. § 2254(e)(2) provides that if a habeas petitioner:

> … has failed to develop the factual basis of a claim in State court proceedings, no evidentiary hearing will be held in federal court unless the petitioner shows that—

> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)

In *Shinn v. Ramirez*, the United States Supreme Court reinforced that when reviewing a federal habeas petition, the federal court may not consider evidence beyond the state court record unless the requirements of 28 U.S.C. § 2254(e)(2) are met. *See* 596 U.S. 366, 382 (2022). The *Ramirez* Court held that, with respect to procedurally defaulted claims, the federal habeas court may not hold an evidentiary hearing or otherwise consider new evidence regarding the question of cause and prejudice relative to the procedural default, or regarding the merits of the claim, unless the requirements of § 2254(e)(2) are met. *See id*. at 382–91.

**D. Ground 1 – Fair Cross Section Challenge to Jury Venire**

In Ground 1, Goodlow claims his federal constitutional rights were violated because the jury venire from which the jury for his retrial was chosen lacked any African-American jurors, that African-Americans were systematically excluded from the venire, and that he was deprived of a jury made up of a fair cross-section of the community. (ECF No. 45 at 4–9.)

During jury selection, outside the presence of the jury, Smith's counsel made a motion to strike the jury venire:

> I represent to the Court as an officer of the Court looking around this venire that there appear to be no African-American persons on our venire, and I'm informed through the internet as a matter of fact that in Washoe County there are approximately 2.6 percent African-American or [B]lack residents of this county. And I believe that without some representation of

> the [B]lack community or some reason why they are not being selected as jurors, my client is being deprived of a trial by a jury of his peers. And I at this time move to strike the venire.

(ECF No. 29-32 at 18.) Goodlow's counsel joined the motion. (*Id.* at 19.) The trial judge denied the motion, stating:

> I've considered that. Because the venire panel is a random selection process, I did note that there may be some African-Americans, I'm not sure if there are in the venire panel or not. I also noted other minorities and other non-Caucasians, and some have been called to the immediate panel at this time. So under the circumstance, again, race is not an issue in this case. It certainly can be something the defense can explore in voir dire, and in my view that will eliminate the problem.

(*Id.*) Smith's counsel renewed the motion to strike after the jury was selected, noting that "[d]uring the voir dire process, I asked the panel if any of them were or considered themselves to be African-American or [B]lack, and there were no affirmative responses to that panel or anyone seated to that panel. And that is my representation and my motion." (ECF No. 45-2 at 21.) The trial judge denied the renewed motion. (*Id.*)

Under the Sixth and Fourteenth Amendments, a criminal defendant in state court has a right to be tried by a jury drawn from a representative cross-section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 528 (1975). But a defendant is not entitled to a jury of any particular composition. *See id*. at 538. The fair-cross-section requirement applies to the larger venire pool and not to the petit jury itself. *See id*. A petitioner may demonstrate a violation of the fair-cross-section requirement by proving that the jury venire from which the petit jury was selected did not represent a fair cross-section of the community. *See Duren v. Missouri*, 439 U.S. 357, 364 (1979). A habeas petitioner establishes a prima facie violation of the fair-cross-section requirement—shifting the burden of proof to the respondents—by showing: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id*. However, "a violation

of the fair cross-section requirement cannot be premised upon proof of underrepresentation in a single jury. While juries must be drawn from a source fairly representative of the community, the composition of each jury need not mirror that of the community." *United States v. Mitchell*, 502 F.3d 931, 950 (9th Cir. 2007) (quoting *United States v. Miller*, 771 F.2d 1219, 1228 (9th Cir. 1985)).

Goodlow asserted this claim on his direct appeal. (ECF No. 30-25 at 17–21.) The Nevada Supreme Court denied relief on the claim, ruling that Goodlow failed to satisfy the second and third elements of the analysis prescribed by the Supreme Court in *Duren*. (ECF No. 30-39 at 2–3.) The *Duren* analysis was previously adopted by the Nevada Supreme Court. *See Williams v. State*, 125 P.2d 627 (Nev. 2005); *Evans v. State*, 926 P.2d 265 (Nev. 1996).

The Court finds the Nevada Supreme Court's ruling was reasonable. The only evidence Goodlow presented in support of this claim was Smith's counsel's observation that there appeared to be no African-Americans in the jury venire and his representation that he found on the internet that in Washoe County there were approximately 2.6 percent African-American or Black residents. Goodlow made no showing that African-Americans were underrepresented on Washoe County jury venires generally or that there was a systematic exclusion of African-Americans in the jury-selection process. The Nevada Supreme Court's adjudication of the claim, as presented on Goodlow's direct appeal, was not contrary to or an unreasonable application of clearly established Supreme Court precedent, and it was not based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d).

In his Petition, Goodlow supports this claim with evidence that was not presented on his direct appeal, and that he did not proffer in state court until his procedurally barred second state habeas action. According to Goodlow, on October 1, 2021, he received from Nevada's Second Judicial District Court "an Excel spreadsheet containing juror race/ethnicity data collected between July 2017 and September 2021." (ECF Nos. 45 at

6; 40; 45-3.) Goodlow states: "The spreadsheet contains entries corresponding to nearly 17,000 jurors, yet none are recorded as being "Black/African American." (ECF No. 45 at 6.) Goodlow notes that the Administrator and Clerk of the Second Judicial District Court notified him that "[r]ace and ethnicity data did not begin to be collected until 2017." (*Id.*; ECF No. 45-3.)

In his second state habeas action, Goodlow reasserted his fair-cross-section challenge and sought to support the claim with the information obtained from the Second Judicial District Court. (ECF No. 59-24 (opening brief on appeal in second state habeas action).) But the Nevada Court of Appeals ruled that the claim in Goodlow's second state habeas action was subject to the law of the case doctrine, because the claim was asserted and adjudicated on Goodlow's direct appeal. The court further held that the claim was barred under NRS § 34.726(1) (statute of limitations) and NRS § 34.810(2) (successive petitions), and that Goodlow did not make a showing of cause and prejudice to overcome the procedural bars. (ECF No. 59-43.) The Nevada Court of Appeals' ruling was as follows:

> Moreover, even assuming law of the case does not bar review of this claim, Goodlow also must demonstrate good cause and prejudice sufficient to overcome the procedural bars. [*Rippo v. State*, 134 Nev. 411, 428, 423 P.3d 1084, 1101 (2018).] Goodlow argues he had good cause to overcome the procedural bars because he recently obtained information concerning the racial makeup of the jury venire members summoned for service in Washoe County between 2017 and 2021. Goodlow contends that African Americans were underrepresented in the jury venire for his 2014 trial and that the data he obtained demonstrated that African Americans were underrepresented by the jury venires summoned for trials that occurred from 2017 to 2021. Goodlow therefore asserts that he has new support for his fair-cross-section challenge such that he met his burden to overcome application of the procedural bars.
>
> Even assuming Goodlow's allegations regarding the jury venires in Washoe County from the time period between 2017 and 2021 are accurate, Goodlow does not meet his burden to demonstrate good cause because he does not explain how information from 2017 to 2021 was relevant to his 2014 trial.
>
> Goodlow also fails to meet his burden to demonstrate undue or actual prejudice. Because the information upon which Goodlow bases his claim could not have been available to the trial court, Goodlow fails to show how the future information regarding jury venires could have affected the

> trial court's decision in 2014 to deny his fair-cross-section challenge. Moreover, Goodlow does not allege that any underrepresentation of African-Americans in the 2014 jury venire occurred due to systemic exclusion of that group in the jury-selection process, and he thus fails to meet his burden to demonstrate that any underrepresentation of African Americans was inherent in the particular jury-selection process utilized by Washoe County. *See Valentine v. State*, 135 Nev. 463, 465, 454 P.3d 709, 713–14 (2019); *see also Randolph v. People of the State of Cal.*, 380 F.3d 1133, 1141 (9th Cir. 2004) ("A showing that a jury venire underrepresents an identifiable group is, without more, an insufficient showing of systematic exclusion…."). Therefore, Goodlow does not meet his burden of demonstrating that an error stemming from the jury-selection process worked to his actual and substantial disadvantage.
>
> For the foregoing reasons, Goodlow fails to overcome the law of the case or to demonstrate good cause and undue or actual prejudice sufficient to overcome the procedural bars concerning this claim. Accordingly, we conclude that the district court did not err by concluding that Goodlow was not entitled to relief based on this claim without first conducting an evidentiary hearing.

(*Id*. at 4–5.)

Therefore, Goodlow's claim as supported by his new evidence—the information he received from the Second Judicial District Court in 2021—is subject to the procedural default doctrine here. Under 28 U.S.C. § 2254(e)(2) and *Ramirez*, the new evidence is inadmissible in this case to show cause and prejudice to overcome the procedural default or to support the claim on its merits. *See* Discussion, *supra*, Parts III.B. and C. Goodlow makes no attempt to show that the new evidence meets the standard for evidentiary development under § 2254(e)(2). And the new evidence is not rendered admissible under § 2254(e)(2) by virtue of Goodlow's proffer of it in his procedurally barred second state habeas action. *See McLaughlin v. Oliver*, 95 F.4th 1239, 1249 (9th Cir. 2024) ("Under [*Ramirez*] … failure to present evidence to the state courts in compliance with state procedural rules … counts as a failure to develop the factual basis of a claim in State court" (internal quotation marks and alterations removed) (citing and quoting § 2254(e)(2) and *Ramirez)*).

Goodlow argues that the procedural default doctrine should not apply because the Nevada Court of Appeals' ruling was ambiguous as to whether the claim was barred by the law of the case doctrine or by NRS §§ 34.726(1) and 34.810(2). (ECF No. 78 at 6–9.)

But the Court of Appeals' ruling is clear: the claim, to the extent previously presented on Goodlow's direct appeal without the new evidence, was subject to the law of the case doctrine, because that was the claim adjudicated on the direct appeal. To the extent the claim was augmented with new evidence in Goodlow's second state habeas action, the claim was barred by NRS §§ 34.726(1) and 34.810(2). Goodlow did not make a showing to overcome either the law of the case bar or the statutory procedural bars. The Nevada Court of Appeals considered Goodlow's new evidence only with respect to the question of whether, with that evidence, he could overcome either the law of the case bar or the bars of NRS §§ 34.726(1) and 34.810(2). The court did not reach the merits of the claim and did not consider the new evidence in that context.

So, in this federal habeas action, the claim, as presented with the new evidence, is procedurally defaulted. Goodlow does not make a showing of cause and prejudice to overcome that procedural default and the Court denies the augmented claim on that ground.

**E. Ground 2 – Denial of Motion to Sever**

In Ground 2, Goodlow claims his federal constitutional rights were violated because the trial court denied his motion to sever his trial from Smith's trial. (ECF No. 45 at 9–12.) Goodlow argues that his defense and Smith's defense were mutually antagonistic, and that Smith's attorney functioned as a second prosecutor, violating his rights under the Fifth, Sixth and Fourteenth Amendments. (*Id.*)

The parties appear to agree that Goodlow asserted this claim on his direct appeal. (ECF Nos. 45 at 12; 73 at 15; 30-25 at 22–24.) On that appeal the Nevada Supreme Court rejected the claim, ruling as follows:

> … Goodlow contends that the district court abused its discretion by denying his motion to sever his trial from his codefendant's because they had antagonistic defenses. *See Marshall v. State*, 118 Nev. 642, 646–47, 56 P.3d 376, 379 (2002) (explaining that this court will not reverse a district court's decision regarding joinder absent an abuse of discretion). We disagree. Goodlow testified and raised several defenses at trial, but the crux of his defense was that the encounter with the victim started before he arrived and his codefendant fired the fatal shot. Goodlow's codefendant did

> not testify at trial or present any witnesses but argued in closing that he was guilty of second-degree murder. We are not convinced that these defenses qualify as antagonistic. *See*, *e.g.*, *Butler v. State*, 797 S.W.2d 435, 437 (Ark. 1990) (discussing antagonistic defenses). Regardless, "antagonistic defenses are a relevant consideration but not, in themselves, sufficient grounds for concluding that joinder of defendants is prejudicial." *Marshall*, 118 Nev. at 648, 56 P.3d at 379. Instead, an appellant "must show that the joint trial compromised a specific trial right or prevented the jury from making a reliable judgment regarding guilt or innocence." *Id*. at 648, 56 P.3d at 380. Goodlow fails to make that showing.

(ECF No. 30-39 at 3–4.)

Because the claim was adjudicated on its merits by the Nevada Supreme Court, this Court applies the AEDPA standard of review. *See* Discussion, *supra*, Part III.A. Goodlow argues that the Nevada Supreme Court's ruling was unreasonable within the meaning of 28 U.S.C. § 2254(d). (ECF Nos. 45 at 12; 78 at 21–22.) But Goodlow's claim fails for a fundamental reason: there is no clearly established federal law requiring severance of criminal trials in state court even when the defendants assert mutually antagonistic defenses. *See Runningeagle v. Ryan*, 686 F.3d 758, 774, 776–77 (9th Cir. 2012); *see also Collins v. Runnels*, 603 F.3d 1127, 1131–33 (9th Cir. 2010) (holding that neither *Zafiro v. United States*, 506 U.S. 534, 539 (1993), nor *United States v. Lane*, 474 U.S. 438, 446 & n.8 (1986) established a constitutional standard binding on the states). Goodlow does not show the Nevada Supreme Court's ruling to be contrary to, or an unreasonable application of, clearly established federal law, and does not show that it was based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). Applying the AEDPA standard, the Court denies relief on Ground 2 as it was presented to the Nevada Supreme Court on Goodlow's direct appeal.

Much like with Ground 1, Goodlow here presents new evidence in support of Ground 2 that he did not proffer in state court until his procedurally barred second state habeas action. (ECF No. 45 at 11.) The new evidence here is a declaration of his counsel's investigator, in which he says she interviewed Smith on December 2, 2021, and reports what Smith told her. (ECF No. 45-4.) Goodlow characterizes Smith's statements to the investigator, as reported by the investigator in her declaration, as follows:

> Goodlow now has obtained statements from Smith that further [support] his claim. ([ECF No. 45-4].) Smith told his attorney, John Ohlson, exactly what happened. (*Id*. ¶ 10.) Smith asked if there was any way he could testify on Goodlow's behalf as neither Goodlow nor he intended to kill anybody that night, and the first bullet that hit Mr. Riley was inadvertently fired. (*Id*.) Smith asked Ohlson to sever their cases. (*Id*. ¶ 11.) He refused and said there was no need because Goodlow's attorney would do it. (*Id*.) The motion ultimately was denied by the judge. (*Id*.) Smith told Attorney Ohlson he wanted to testify on behalf of Goodlow, but Attorney Ohlson said there was no way he was letting Smith get on the stand. (*Id*. ¶ 12.) Smith felt that Attorney Ohlson was turning Smith and Goodlow against each other. (*Id*.) Smith would have testified to all of this if given the opportunity. (*Id*. ¶ 13.)

(ECF No. 45 at 11.) This new evidence, though, is inadmissible in this action. *See* Discussion, *supra*, Parts III.B. and C. Goodlow's second state habeas action was procedurally barred, and, on the appeal in that action, the Nevada Court of Appeals only considered this new evidence with regard to whether it was such as to overcome the bars of the law of the case doctrine or the bars of NRS §§ 34.726(1) and 34.810(2). (ECF No. 59-43 at 7–8.) To the extent Goodlow augments his claim with new evidence, it is procedurally defaulted, and Goodlow makes no showing to overcome the procedural default.

### F. Grounds 3A and 3B – Failure of Trial and Appellate Counsel to Challenge Jury Instruction on Withdrawal from Conspiracy

In Ground 3A, Goodlow claims his federal constitutional rights were violated because his trial counsel was ineffective for not challenging a jury instruction that he contends precluded his withdrawal defense. (ECF No. 45 at 12–17.) In Ground 3B, Goodlow claims his appellate counsel was ineffective for not challenging the same jury instruction on his direct appeal. (*Id*.) Goodlow claims that at trial he attempted to present a withdrawal defense (*id*. at 13 ("Petitioner's defense was that he withdrew from the conspiracy before Riley was murdered.")), but his defense was undermined by jury instruction number 50 (ECF No. 29-40 at 59–60 ("Instruction No. 50")), which stated, in relevant part, that "[t]he defendant claiming withdrawal has the burden of proving, by a

preponderance of the evidence, that he withdrew from the conspiracy before an overt act was committed." (ECF No. 45 at 13–14.)

In *Strickland v. Washington*, the Supreme Court established a two-prong test for claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of 'reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *Id*. at 697. Where a state court previously adjudicated a claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05. In *Harrington*, the Supreme Court explained that, in such cases, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential … and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Cheney v. Washington*, 614 F.3d 987, 994–95 (2010) (double deference required with respect to state court adjudications of *Strickland* claims).

Goodlow raised the claims in Grounds 3A and 3B in his first state habeas action, the district court denied the claims, and the Nevada Supreme Court affirmed. (ECF No. 32-33.) The Nevada Supreme Court ruled that Goodlow's claims lacked merit because Instruction No. 50 correctly instructed the jury. (*Id*. at 3–4; 59-43 at 9 (the Nevada Court

of Appeals, in Goodlow's second state habeas action, describing the Nevada Supreme Court's ruling Goodlow's first state habeas action).) Because this was a ruling by the Nevada Supreme Court regarding the propriety of a jury instruction *as a matter of state law*, it is beyond the scope of this Court's federal habeas review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Bonin v. Calderon*, 59 F.3d 815, 841 (9th Cir. 1995).

The Nevada Supreme Court went on to rule in the alternative that, even assuming Instruction 50 was erroneous, Goodlow was not prejudiced because of the substantial evidence of his guilt at trial, "including witness testimony and a surveillance video that clearly depicts Goodlow's actions both before and after he claims to have withdrawn." (ECF No. 32-33 at 4; 59-43 at 9–10.) The Court finds this ruling was reasonable. Beyond the evidence mentioned by the Nevada Supreme Court, Goodlow's own testimony regarding the events underlying his conviction reveals that his withdrawal defense was weak at best, and destined to fail, regardless of the nuances of Instruction No. 50. *See* Discussion, *supra*, Part II.

Affording the Nevada Supreme Court's ruling the deference required by 28 U.S.C. § 2254(d), the Court determines that the ruling of the Nevada Supreme Court was not contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent. Nor was it based on an unreasonable determination of the facts in light of the evidence. The Court denies Goodlow relief on Grounds 3A and 3B as those claims were presented on the appeal in his first state habeas action.

Here again, Goodlow seeks to add support to these claims by presenting new evidence not proffered in state court until his procedurally barred state habeas action. (ECF No. 45 at 15.) The new evidence Goodlow would have this Court consider in support

of Grounds 3A and 3B is, again, the 2021 declaration of an investigator regarding what Smith told her in an interview:

> There is now additional, newly discovered evidence supporting Goodlow's withdrawal defense—Smith's statements show that Goodlow renounced the aim of the conspiracy and tried his best to redirect Smith and remove Smith from the situation.

(*Id.*) Goodlow refers to paragraphs 5 and 8 of the investigator's declaration, in which the investigator states:

> 5. Smith knocked on the door, but Mr. Riley wouldn't open it, so Smith broke the window. After a while of trying to gain entry into the room, Goodlow asked Smith to stop, he said to Smith "Dude, I aint trippin', let's go." He said it several times, "let's go, man let's go bro." Goodlow walked away from Smith and insisted they leave, but Smith stayed and insisted on gaining entry.
>
> * * *
>
> 8. Mr. Goodlow tried his best to redirect Smith; he tried to remove Smith from that situation, Smith said. Smith told me that had the gun Goodlow was handling not discharged, he would not have fired his gun.

(ECF No. 45-4 at 2–3.) But under § 2254(e)(2) and *Ramirez*, Goodlow's new evidence is inadmissible here. *See* Discussion, *supra*, Parts III.B. and C. Goodlow's second state habeas action was procedurally barred, and on the appeal in that action the Nevada Court of Appeals only considered the new evidence with regard to whether Goodlow could overcome the law of the case bar or the statutory procedural bars of NRS §§ 34.726(1) and 34.810(2). (ECF No. 59-43 at 9–10.) That court stated: "Goodlow does not demonstrate that the information contained within the declaration is 'substantially new or different' from information already presented at trial such that the doctrine of the law of the case should not bar relitigation of Goodlow's underlying claim." (*Id.* at 9.) And: "Goodlow does not demonstrate that an impediment external to the defense prevented him from presenting factual information obtained from his codefendant in his first, timely postconviction habeas petition." (*Id.*) So, to the extent Goodlow augments Grounds 3A

and 3B with the new evidence, those claims are procedurally defaulted and Goodlow makes no showing, under *Martinez* or otherwise, to overcome the procedural defaults.

**G. Certificate of Appealability**

For a certificate of appealability ("COA") to issue, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). Additionally, where the district court denies a habeas claim on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000). Applying these standards, the Court finds that a certificate of appealability is unwarranted.

**IV. CONCLUSION**

It is therefore ordered that Goodlow's Third Amended Petition for Writ of Habeas Corpus (ECF No. 45) is denied. Goodlow is denied a certificate of appealability. The Clerk of the Court is kindly directed to enter judgment accordingly and close this case.

DATED THIS 26th Day of November, 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE